UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MATTHEW MAULE,

               Plaintiff,                           Hon. Robert Holmes Bell

v.                                              Case No. 1:06 CV 236

JIM CRAWFORD, et al.,

               Defendants.

_____/


## REPORT AND RECOMMENDATION

      This matter is before the Court on Defendant Youngs' Motion for Summary Judgment, (dkt. #112), and the Motion to Dismiss and/or for Summary Judgment, (dkt. #115), brought by Defendants Crawford, Wayne, Church, and Hewgley.  Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions to dismiss or for summary judgment, the undersigned recommends that Defendant Youngs' motion be **granted in part and denied in part**. and that the motion brought by Defendants Crawford, Wayne, Church, and Hewgley be **granted**.


## BACKGROUND

      Based on events which occurred on February 28, 1998, Plaintiff was charged with three counts of criminal sexual conduct with a person between the ages of 13-15.  (Dkt. #115, Exhibit A). Plaintiff pleaded guilty to these charges, and on September 1, 1999, he was sentenced to serve 5-15 years in prison.  *Id.*  On March 12, 2004, Plaintiff was released from prison on parole, subject to (in part) the

following conditions: (1) he was prohibited from engaging in threatening or intimidating behavior; (2) he was prohibited from having contact with minors; (3) he was prohibited from associating with convicted felons; and (4) he was prohibited from consuming alcohol or frequenting establishments serving alcohol for consumption on the premises.  (Dkt. #115, Exhibit B).  Defendant Youngs was assigned as Plaintiff's parole officer.  In March 2005, Plaintiff was arrested and charged with violating these conditions.  This action concerns the conduct which led to Plaintiff's 2005 arrest and his subsequent preliminary parole violation hearing.  The following allegations are contained in Plaintiff's First Amended Complaint.  (Dkt. #87).

On or about January 14, 2005, Plaintiff met Becky Grover, with whom he "started to develop a relationship."  On March 21, 2005, Plaintiff "permanently ended" his relationship with Grover because she had "returned to using drugs."  Upon learning of Plaintiff's decision, Grover was "very angry."  The following day, Grover made a "written and oral complaint" to Defendant Youngs that resulted in Plaintiff being charged with multiple violations of his parole requirements.

On March 23, 2005, Defendant Youngs telephoned Plaintiff and instructed him to report to her office the following day.  Plaintiff reported to Defendant Youngs as instructed, at which point he was taken into custody and transported to the Osceola County Jail.  On March 24, 2005, Defendant Youngs met with Plaintiff and informed him that he was being charged with six parole violations. Plaintiff was informed that he had a right to preliminary parole violation hearing at which it would be determined whether there existed probable cause to believe that he committed a parole violation.

When Plaintiff requested a preliminary parole violation hearing, Defendant Youngs told him that such a hearing would be a "waste of time."  Plaintiff nonetheless requested a preliminary hearing, in response to which Defendant Youngs "displayed agitation, upset and anger" and told Plaintiff

that "more charges will now be added."  Defendant Youngs also rejected Plaintiff's request to be represented by counsel at the preliminary hearing.

On March 25, 2005, Defendant Youngs again met with Plaintiff, informing him that he was being charged with two additional parole violations.  Plaintiff again requested a preliminary parole violation hearing.  He also "inquired into being allowed an attorney at his preliminary hearing and was again directed by Defendant Youngs that an attorney would not be allowed nor appointed."  Defendant Youngs then asked Plaintiff if he wanted to question any witnesses in his behalf at the preliminary hearing.  Plaintiff informed Youngs that he wanted to question Larry Claybough.  Defendant Youngs told Plaintiff that because Claybaugh was on probation he would not be permitted to testify.  Plaintiff was informed that his preliminary parole violation hearing would be conducted on March 29, 2005.

On March 25, 2005, Plaintiff requested that he be permitted "access to" the jail's law library so that he could prepare for his preliminary hearing.  Defendant Hewgley informed Plaintiff that his request would be reviewed by Defendant Wayne.  Plaintiff did not receive a response to his request.

On March 29, 2005, Plaintiff was placed in "physical restraints" and escorted to the room in which his preliminary hearing was conducted.  Upon entering the hearing room, Plaintiff requested that his restraints be removed, a request which Defendant Youngs denied.  During the hearing, Plaintiff was required to sit in an "under-size" chair while "everybody" else sat in "adult-size" chairs.  Due to "the height of the table top and the degree of the physical restraint," Plaintiff "had to use his cheek and mouth to shuffle through the documents he possessed."

At the outset of the hearing, Plaintiff requested that an attorney be appointed to represent him.  Defendant Genter denied Plaintiff's request.  During the hearing, Plaintiff sought to "admit documentary evidence in his favor," but was denied by Defendant Genter.  Plaintiff also requested that

Larry Claybough be allowed to testify, a request which Defendant Youngs denied.  Defendant Genter "made no findings at the preliminary hearing" and Plaintiff "was not informed of any disposition until twenty-three (23) days later when he learned that Genter found probable cause."

On April 5, 2005, the MDOC issued an arrest warrant for Plaintiff.  On April 6, 2005, Plaintiff again requested to use the jail's law library to prepare for "his anticipated formal parole revocation hearing."  Plaintiff received no response to this request.  On April 11, 2005, Plaintiff renewed his request to use the jail's law library.  That same day, Plaintiff requested an inmate grievance form so that he could grieve his inability to use the jail's law library.  Defendant Church denied Plaintiff's request, after which Plaintiff "drafted and mailed a 'home-made' grievance" to Defendant Wayne.  On April 12, 2005, Plaintiff was informed that his request to use the jail's law library "has been turned over to the probation department because we don't have those materials here."  On April 13, 2005, Plaintiff was transferred from the Osceola County Jail to a Michigan Department of Corrections facility.

Plaintiff initiated the present action on April 7, 2006, against Jim Crawford, Osceola County Sheriff; Russ Wayne, Osceola County Jail Administrator; Jean Hewgley, Osceola County Deputy Sheriff; Gae Church, Osceola County Deputy Sheriff; Nancy Youngs, Parole Officer; and Sheila Genter, Hearings Examiner.  As detailed below, Plaintiff asserts that Defendants: (1) violated his procedural due process rights; (2) violated his substantive due process rights; (3) violated his right of access to the courts; (4) violated his right to be from "deliberate indifference;" (5) failed to adequately train and supervise; (6) retaliated against him; and (7) were grossly negligent.  Defendant Youngs has moved for summary judgment.  Defendants Crawford, Wayne, Church, and Hewgley have moved to dismiss Plaintiff's claims or, in the alternative, for summary judgment.  Plaintiff has yet to effect service on Defendant Genter.

## STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in his favor.  *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000).  Furthermore, complaints filed by pro se plaintiffs are held to an "especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery."  *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."  *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the nonmoving

party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

I.          **Procedural Due Process Claims**

Plaintiff was charged with the following parole violations: (1) engaging in behavior that was assaultive, abusive, threatening and/or intimidating; (2) being in a residence where there were two minor children; (3) associating with a known felon; (4) two counts of consuming alcohol; (5) entering

an establishment that served alcohol; (6) possessing alcohol; and (7) failing to comply with his parole officer's order "not to have contact with Becky Grover, who has joint legal custody of her minor children." (Dkt. #113, Exhibit A, Attachment 2; Dkt. #115, Exhibit B). Defendant Genter "dismissed for no witnesses," the two counts of consuming alcohol and the charge of possessing alcohol. (Dkt. #113, Exhibit A, Attachment 2). Genter determined that there existed probable cause that Plaintiff was guilty of the other five parole violations.[1]

Plaintiff asserts that Defendants Wayne, Hewgley, Church, Youngs, and Genter violated his right to procedural due process. Specifically, Plaintiff alleges that his due process rights were violated because at the preliminary parole violation hearing: (1) he was not allowed the assistance of counsel, and (2) Larry Claybaugh was not permitted to testify.

A.     Defendants Wayne, Hewgley and Church

A review of Plaintiff's complaint reveals that Plaintiff has asserted absolutely no facts against Defendants Wayne, Hewgley, or Church that implicate them in any way in this particular claim. The Court recommends, therefore, that Plaintiff's claim that Defendants Wayne, Hewgley, and Church violated his right to procedural due process be dismissed.

B.     Defendant Youngs

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court examined "whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some

---

[1] Defendants allege that Plaintiff was thereafter returned to the custody of the Michigan Department of Corrections, after which a final parole revocation hearing was conducted. Defendants further allege that Plaintiff was found guilty of violating his parole and returned to prison. Plaintiff does not dispute this or allege otherwise. The Court further notes that Plaintiff has asserted no claims concerning his final parole revocation hearing.

opportunity to be heard prior to revoking his parole." *Id.* at 472.  Before "reaching the issue of whether due process applies to the parole system," the Court examined "the function of parole." *Id.* at 477.

The Court observed that parole is not "an ad hoc exercise of clemency," but is instead "an established variation on imprisonment of convicted criminals." *Id.*  Accordingly, parolees are granted early release from prison so long as they abide by various restrictions and conditions which "restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen." *Id.* at 478.  In return, the parolee "is entitled to retain his liberty as long as he substantially abides by the conditions of his parole." *Id.* at 479.

The Court observed that parole revocation does not deprive the individual of "the absolute liberty to which every citizen is entitled," but instead deprives him only of the "conditional liberty" which is dependent on the parolee's willingness to observe the conditions of parole. *Id.* at 480. Observing that parole occurs after the criminal prosecution has been completed, the Court concluded that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id.*  Nonetheless, the Court concluded that because the parolee "has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," revocation of parole must be accompanied by some level of due process. *Id.* at 482.

With respect to the preliminary parole violation hearing, the Court concluded that due process required "some minimal inquiry. . .conducted at or reasonably near the place of the alleged parole violation. . .and as promptly as convenient after arrest while information is fresh and sources are available." *Id.* at 485.  This inquiry can be "informal" and is intended to determine whether there exists probable cause to believe that the parolee has violated the terms and conditions of his parole. *Id.*  This

determination must be made by an independent officer other than the person who made the report of parole violations or who has recommended revocation of parole. *Id.* at 485-86.

The parolee must be given notice that the preliminary hearing will take place and that its purpose is to assess whether there exists probable cause to believe that he has violated the terms and conditions of his parole. *Id.* at 486-87. The parolee must also be given notice of the parole violations he is alleged to have committed. *Id.* at 487. The parolee must be permitted to appear at the preliminary hearing and speak on his own behalf and present relevant evidence. The parolee must also be permitted to cross-examine any person whose testimony will be relied upon when making the revocation determination, unless the hearing officer determines that "an informant would be subjected to risk of harm if his identity were disclosed." The hearing officer must also create a "summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position."

Based on the information before her, the hearing officer must determine "whether there is probable cause to hold the parolee for the final decision of the parole board on revocation." The hearing officer should state the reasons for her decision and identify the evidence on which she relied, but she need not make "formal findings of fact and conclusions of law." A determination by the hearing officer that probable cause exists is "sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision." *Id.*[2] The Court expressly stated that it was not deciding the question "whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." *Id.* at 489.

---

[2] The Court went on to articulate almost identical requirements that must be satisfied regarding the final parole revocation hearing. *Id.* at 487-89. The Court again notes, however, that Plaintiff's complaint contains no claims or allegations concerning his final parole revocation hearing.

The Court addressed this latter question the following year in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), when it examined "the related questions whether a previously sentenced probationer is entitled to a hearing when his probation is revoked and, if so, whether he is entitled to be represented by appointed counsel at such a hearing." *Id.* at 779.  After concluding that there exists no relevant difference for due process purposes between revocation of probation and revocation of parole, the Court addressed whether an indigent parolee or probationer "has a due process right to be represented by appointed counsel" at revocation hearings. *Id.* at 781-83.

The Court observed that the due process protections it articulated in *Morrissey* "serve as substantial protection against ill-considered revocation," but nonetheless recognized that "the effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess." *Id.* at 786.  For example, the Court recognized that "[d]espite the informal nature of the proceedings and the absence of technical rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence." *Id.* at 786-87.

However, the Court refused to find that the Constitution required *in all cases* the appointment of counsel at revocation hearings for indigent parolees or probations, observing that:

> While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel.  In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him.  And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel.

The introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding.  If counsel is provided for the probationer or parolee, the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views.  The role of the hearing body itself, aptly described in *Morrissey* as being 'predictive and discretionary' as well as factfinding, may become more akin to that of a judge at a trial, and less attuned to the rehabilitative needs of the individual probationer or parolee.  In the greater self-consciousness of its quasi-judicial role, the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate than to continue nonpunitive rehabilitation.  Certainly, the decisionmaking process will be prolonged, and the financial cost to the State-for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review-will not be insubstantial.

In some cases, these modifications in the nature of the revocation hearing must be endured and the costs borne because, as we have indicated above, the probationer's or parolee's version of a disputed issue can fairly be represented only by a trained advocate.  But due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed.

*Id.* at 787-88.

The Court concluded that whether counsel must be provided at a revocation hearing "must be made on a case-by-case basis in the exercise of sound discretion by the state authority charged with responsibility for administering the probation and parole system."   *Id.* at 790.   While the appointment of counsel will be "constitutionally unnecessary in most revocation hearings," in certain circumstances "fundamental fairness - the touchstone of due process - will require that the State provide at its expense counsel for indigent probationers or parolees."  The Court declined to try to formulate a detailed set of guidelines to be applied when determining whether due process requires the appointment of counsel.  Instead, the Court reiterated that the relevant state decision makers must be allowed "considerable discretion."  The Court nonetheless suggested that "counsel should be provided" when

the parolee (1) makes a "colorable claim" that he is not guilty of the charged violations, or (2) the parolee's defense is "complex or otherwise difficult to develop or present." *Id.*

      1.    Assistance of Counsel

As previously noted, Plaintiff's request to be represented by counsel at the preliminary parole violation hearing was denied by Defendant Genter, not Defendant Youngs. Nevertheless, an indulgent interpretation of Plaintiff's complaint reveals that Plaintiff has asserted that Defendant Youngs actively participated in the decision to deny his request for counsel. The Court recommends, however, that Defendant Youngs is entitled to relief as to this claim.

First, the Court finds that while Plaintiff may have been entitled to the assistance of counsel at his final parole revocation hearing, such right did not extend to the preliminary parole violation hearing. *See Merlino v. Michigan Department of Corrections*, 2006 WL 176422 at *2 (E.D. Mich., Jan. 24, 2006) ("the Court cannot find that a parolee has a federal constitutional right to an attorney at a preliminary revocation hearing, particularly where the parolee was represented by an attorney at the final revocation hearing"). As Plaintiff has not alleged that he was denied the assistance of counsel at his final parole revocation hearing, the Court concludes that this particular allegation fails to state a claim on which relief may be granted. However, even if this allegation states a claim on which relief may be granted, the Court finds that Defendant Youngs is entitled to summary judgment.

As discussed above, the right to the assistance of counsel at a preliminary parole revocation hearing is quite limited and subject to the "considerable discretion" of the relevant state officials. In response to Plaintiff's request to be appointed counsel at the preliminary parole revocation hearing, Defendant Genter concluded that

-12-

> A review of [Plaintiff's] file indicates he is of average intelligence and acquired his GED while in the institution. The violation charges are not complex in nature and Mr. Maule is mentally and intellectually able to effectively present a defense.

(Dkt. #113, Exhibit A, Attachment 2).

The record more than supports this conclusion. Plaintiff's unpersuasive assertion to the contrary, the Court discerns nothing complicated nor complex about these charges or Plaintiff's asserted defenses thereto. Furthermore, Plaintiff has failed to demonstrate that he possessed a "colorable claim" of innocence to these charges. Based on the facts and circumstances of this case, the evidence submitted, and the legal authority articulated above, the Court concludes that Plaintiff's due process rights were not violated by the decision denying Plaintiff's request for counsel.


2.      Larry Claybaugh

Plaintiff asserts that his due process rights were violated where Defendant Youngs denied his requests to question Larry Claybaugh at the preliminary parole revocation hearing. The Court finds that Defendant Youngs is entitled to summary judgment for several reasons.

As discussed above, when discussing the process to which a parolee is entitled prior to the revocation of parole, the *Morrissey* Court discussed separately the preliminary parole revocation hearing and the final revocation hearing. Nonetheless, in the Court's opinion, the *Morrissey* decision does not stand for the proposition that an analysis of the process provided at the preliminary parole revocation hearing is to be undertaken in a vacuum, but must instead be examined in the context of the *entire* process by which the individual's parole was revoked. *See, e.g., Merlino*, 2006 WL 176422 at *2 (the court found that the decision to deny a parolee the assistance of counsel at a preliminary parole

revocation hearing did not violate due process because the parolee had the assistance of counsel at his final parole revocation hearing).

In other words, the *Morrissey* Court did not identify two separate and distinct sets of procedural requirements that must be satisfied prior to the revocation of parole, but instead articulated a single, general set of procedural requirements that must be satisfied before the revocation of an individual's parole. This is supported by the fact that the procedures which the *Morrissey* Court identified as applicable at the preliminary hearing and the final hearing are essentially identical. Thus, the question is not whether Plaintiff was afforded sufficient procedure at the preliminary parole revocation hearing, without regard for what procedure he was afforded at the final parole revocation hearing. Rather the fundamental question is whether Plaintiff was afforded the process articulated by the *Morrissey* Court prior to the revocation of his parole. In this respect, the Court notes that Plaintiff has not alleged that he was deprived of any of the relevant procedural protections at his final parole revocation hearing. The Court, therefore, concludes that with respect to this particular claim Plaintiff has failed to state a claim on which relief may be granted.

Even if the *Morrissey* decision is interpreted as providing that the procedure accorded at the preliminary parole revocation hearing is to be examined separately, the result is the same. When examining Plaintiff's claim, it is necessary to remember the purpose of the *preliminary* parole revocation hearing. As previously noted, the preliminary parole revocation hearing is a "minimal inquiry" to determine whether there exists *probable cause* to believe that the parolee committed the alleged parole violations. It is an informal proceeding at which rules of evidence or procedure do not apply. Plaintiff has failed to establish that his preliminary parole revocation hearing was fundamentally unfair. While Plaintiff asserts that Claybaugh would have provided relevant and exculpatory evidence, Plaintiff has

failed to submit evidence supporting this allegation. Moreover, even if Claybaugh had provided such testimony, the record would still support Defendant Genter's determination that there existed probable cause as to the five parole violations identified above.

Finally, Defendant Youngs is entitled to summary judgment because she has submitted unrefuted evidence that Claybaugh was, in fact, permitted to testify at Plaintiff's preliminary parole revocation hearing, but simply chose not to do so. Defendant Youngs has submitted a copy of the Notice of Preliminary Parole Violation Hearing that she mailed to Larry Claybaugh. (Dkt. #113, Exhibit A3). This notice informed Claybaugh of the date, time, and location of the hearing. It further informed Claybaugh that "you are requested to attend and present any evidence you may have in this matter." *Id.* Defendant Youngs has also submitted a copy of a letter Claybaugh submitted in response to this notice. (Dkt. #113, Exhibit A4). Claybaugh informed the hearing examiner, Defendant Genter, that he was unable to attend the hearing and, moreover, that he had already spoken with Defendant Youngs concerning the matter. *Id.* In response to this evidence, Plaintiff merely reasserts the allegation in his complaint, that his request to question Claybaugh was denied by Defendant Youngs. In light of the evidence submitted by Defendant Youngs, the Court finds that Plaintiff has failed to demonstrate the existence of a *genuine* factual dispute. The Court recommends, therefore, that Defendant Youngs is entitled to summary judgment as to this claim.

II.        **Substantive Due Process Claims**

Plaintiff asserts that Defendants Wayne, Hewgley, Church, Youngs, and Genter violated his substantive due process rights. Plaintiff fails, however, to articulate the basis for this claim or identify the right or interest Defendants violated. This shortcoming is of no consequence, however, as

even the most generous interpretation of Plaintiff's claim fails to state a claim on which relief may be granted.

As indicated above, Plaintiff has asserted several claims against Defendants, including violation of his First Amendment rights to access the courts and to be free from unlawful retaliation, as well as his Eighth Amendment right to be free from cruel and unusual punishment.  To the extent that Plaintiff's substantive due process claim is based upon a violation of rights enumerated in the Bill of Rights, such claims fail.  In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as the proper constitutional foundation upon which to base a § 1983 action.

In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law.  Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause.  *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)).  The Court noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process.  *Id.* at 271-72.

The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment.  The Court observed

that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment. *Id.* at 272-73.  The Court concluded, therefore, that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he must bring his claim, because substantive due process could afford him "no relief." *Id.* at 274-75.

Thus, to the extent that Plaintiff asserts violation of rights specifically protected by the Bill of Rights, such rights are adequately protected by the relevant provisions thereof.  As in *Albright*, therefore, substantive due process can provide Plaintiff no relief.  Likewise, to the extent that Plaintiff's substantive due process claim is based upon violation of rights other than those enumerated in the Bill of Rights, the result is the same.

To state a claim for violation of his substantive due process rights, Plaintiff must allege that Defendants engaged in conduct that "shocks the conscience." *See United States v. Budd*, 496 F.3d 517, 529-30 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  As the Supreme Court recognized, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Lewis*, 523 U.S. at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)).  To shock the conscience, "conduct must have been 'so brutal and offensive that it did not comport with traditional ideas of fair play and decency.'" *Simon v. Cook*, 261 Fed. Appx. 873, 881 (6th Cir., Jan. 30, 2008) (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)).  Plaintiff has failed to allege any conduct that satisfies this standard. *See, e.g., Nuchols v. Berrong*, 268 Fed. Appx. 414, 415-

18 (6th Cir., March 6, 2008) (where county sheriff angrily told a woman that he would burn her house down, set her dog on fire, and kill her family, court found that while such threats were "shocking in the general sense," they did "not shock the conscience in a constitutional sense").

The Court concludes, therefore, that Plaintiff has failed to state a claim for violation of his substantive due process rights.  Accordingly, the Court recommends that such claims be dismissed.

## III.        Eighth Amendment Claims

Plaintiff asserts that Defendants Crawford, Wayne, Hewgley, Church, and Youngs violated his right to be free from "deliberate indifference."  Again, Plaintiff has failed to articulate the basis for this claim or identify the right or interest Defendants violated.  The concept of "deliberate indifference" has long been recognized as implicating the Eighth Amendment's prohibition against cruel and unusual punishment.  *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) (recognizing that the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs").

Plaintiff's complaint contains no allegations that Defendants were deliberately indifferent to a serious medical need or that they otherwise violated his Eighth Amendment rights.  The Court recommends, therefore, that Plaintiff's claims that Defendants violated his right to be free from "deliberate indifference" be dismissed.

## IV.        Right of Access to the Courts Claims

Plaintiff asserts that Defendants Wayne, Hewgley, and Church violated his right of access to the courts.  Specifically, Plaintiff asserts that Defendants denied his requests to use the jail's law

library.  Plaintiff asserts that access to the law library was necessary so that he could "adequately prepare a difficult, yet available and absolute defense for his anticipated formal parole revocation hearing."

The First Amendment protects every inmate's right of access to the courts, however, this protection extends only to "direct appeals, habeas corpus applications, and civil rights claims." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 355 (1996)).  Moreover, to state a claim for denial of access to the courts, Plaintiff must allege that he suffered an "actual injury," such as "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Casey*, 518 U.S. 343). A parole revocation hearing is simply not encompassed within the First Amendment's right of access to the courts.  Moreover, Plaintiff has failed to allege that he suffered an actual litigation-related injury as a result of his inability to access the jail's law library.

Furthermore, to the extent that this particular claim is interpreted as invoking Plaintiff's Fifth or Sixth Amendment right to counsel, the result is the same.  The Sixth Amendment right to counsel does not extend to parole revocation hearings.  *See, e.g., Tiner v. Poppell*, 1993 WL 309877 at *1 (5th Cir., May 12, 1993) ("an inmate does not have a Sixth Amendment right to counsel at a parole revocation hearing since such a hearing is not a 'criminal proceeding'"); *Morrissey*, 408 U.S. at 480 ("revocation of parole is not part of the criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"); *Stanley v. Brooks*, 2007 WL 1113522 at *4 n.3 (W.D. Pa., April 12, 2007) ("[b]ecause a parole revocation proceeding is not a 'criminal prosecution,' there is no Sixth Amendment right to counsel at a parole revocation hearing"); *Scott v. United States*, 473 F.3d 1262, 1264 (8th Cir. 2007) (recognizing that the Sixth Amendment right to counsel applies to "trial and critical pre-trial stages" of the prosecution).

As for Plaintiff's Fifth Amendment right to counsel, such attaches only during "custodial interrogation." *See McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991); *United States v. Little*, 1993 WL 453396 at *5-6 (6th Cir., Nov. 4, 1993) (quoting *McNeil*, 501 U.S. 182). Plaintiff has not alleged that he was subjected to "custodial interrogation" at his parole revocation hearing or that he was not properly informed of his *Miranda* rights prior to any "custodial interrogation." Plaintiff has also not alleged that he was in any way compelled to incriminate himself or provide adverse testimony or evidence. The Court finds, therefore, that Plaintiff has failed to state a claim for denial of access to the courts (or for denial of the right to counsel). Accordingly, the Court recommends that this claim be dismissed.

## V.        Retaliation Claim

Plaintiff asserts that Defendant Youngs unlawfully retaliated against him. As noted above, Plaintiff was initially charged with six parole violations. However, after Plaintiff indicated to Defendant Youngs that he wanted a preliminary parole violation hearing Defendant Youngs charged him with two additional parole violations. Plaintiff asserts that Defendant Youngs included these two additional charges as retaliation for requesting a preliminary parole revocation hearing.

The elements of a First Amendment retaliation claim are as follows: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

As noted above, Plaintiff had the right to request a preliminary parole revocation hearing, thus he was engaged in protected conduct. With respect to the second element, the Court finds that such is not amenable to resolution on summary judgment. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (recognizing that "this threshold is intended to weed out *only inconsequential actions*," therefore, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury"). Charging an individual with parole violations constitutes neither an inconsequential nor de minimis action, as such could result in his return to prison. The Sixth Circuit has recognized that charging an inmate with a misconduct violation constitutes an adverse action. *See Eby*, 481 F.3d at 441. Charging a parolee with a parole violation seems at least as adverse, if not more so, than charging a prisoner with a misconduct violation.

With respect to the third element of the analysis, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399; *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). If Plaintiff makes this showing, the burden shifts to Defendant, who is entitled to summary judgment if she "can show that [s]he would have taken the same action in the absence of the protected activity." *Thaddeus-X*, 175 F.3d at 399; *Eby*, 481 F.3d at 441-42.

Plaintiff alleges that Defendant Youngs told him that a preliminary hearing would be a "waste of time." Plaintiff further alleges that immediately after informing Defendant Youngs that he

wanted a preliminary parole revocation hearing, Youngs became upset and informed Plaintiff that "more charges will now be added."  As previously noted, Plaintiff asserts (and the record supports) that the following day he was charged with two additional parole violations.[3]  The Court, therefore, finds that Plaintiff has alleged "a chronology of events from which retaliation may plausibly be inferred."  In support of her claim that she is entitled to summary judgment as to this claim, Defendant Youngs offers absolutely no evidence, but instead simply asserts that "Plaintiff has not alleged facts to support *any* of [the] elements" of a retaliation claim.  As discussed immediately above, the Court disagrees.  Defendant Youngs has presented neither evidence nor argument that she would have charged Plaintiff with the two additional parole violations in the absence of his request for a preliminary parole revocation hearing.[4]  The Court, therefore, recommends that Defendant Youngs is not entitled to the dismissal of Plaintiff's retaliation claim, nor is she entitled to summary judgment on this claim.[5]

## VI.        Failure to Train and Supervise Claims

Plaintiff asserts that Defendants Crawford, Wayne, and Hewgley are liable for their "failure to adequately train and supervise."  However, Plaintiff has again failed to articulate the basis for

---

[3]  The Court notes that the Hearing Examiner ultimately dismissed these two additional charges.  (Dkt. #115, Exhibit B4).  Thus, Plaintiff is not required to demonstrate that his conviction on these charges has been overturned or otherwise invalidated.  *See Heck v. Humphrey*, 512 U.S. 477 (1994); *Edwards v. Balisok*, 520 U.S. 641 (1997).

[4]  The Court notes that there is no evidence in the record to suggest that the two additional parole violations with which Plaintiff was charged were based on evidence obtained after Plaintiff was charged with the six initial parole violations.  In fact, the Parole Violation Report completed by Defendant Youngs indicates that she learned of the factual basis for the two additional parole violation charges on March 22, 2005, two days before she charged Plaintiff with the six initial parole violations.  (Dkt. #115, Exhibit B2).

[5]  The Court also recommends that Defendant Youngs is not entitled to qualified immunity, as a reasonable person would have clearly understood that the actions alleged by Plaintiff state a claim for retaliation.  *See Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).

these claims, instead simply asserting in conclusory fashion that Defendants failed "to adequately train and supervise."

The only factual allegation Plaintiff asserts against Defendant Hewgley is that when he verbally requested to use the jail's law library she informed him that any such requests had to be made in writing so that they could be reviewed by Defendant Wayne.  As to Defendants Wayne and Crawford, Plaintiff asserts (at most) that they denied or failed to respond to his grievances and complaints.  Such allegations do not state a claim upon which relief may be granted.

In a § 1983 claim, supervisory liability "cannot attach where the allegation of liability is based upon a mere failure to act."  *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).  Plaintiff's claim must instead be based "upon active unconstitutional behavior" and "more than a mere right to control employees."  *Id.* at 206-07.  Plaintiff "must show that [Defendants] otherwise encouraged or condoned the actions of the other Defendants."  *Id.* at 207.  Plaintiff's complaint, even under the most generous interpretation, contains no such allegations.  The Court recommends, therefore, that Plaintiff's claims for failure to train and supervise be dismissed.

## VII.        Plaintiff's State Law Claims

Plaintiff asserts that all Defendants are guilty of "gross negligence."  Not surprisingly, Plaintiff has failed to articulate the basis for this claim or identify the action on which this claim is based or the injury he allegedly suffered as a result.

As Defendants note, "an employee of a governmental agency acting within the scope of his or her authority is immune from tort liability unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury."  *Kendricks v. Rehfield*, 716 N.W.2d 623, 625

(Mich. Ct. App. 2006) (quoting Mich. Comp. Laws § 691.1407(2)).  Michigan law defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  Mich. Comp. Laws § 691.1407(7)(a).  Michigan courts have indicated that gross negligence is to be found only where an objective observer could reasonably conclude "that the actor simply did not care about the safety or welfare of those in his charge."  *Tarlea v. Crabtree*, 687 N.W.2d 333, 339-40 (Mich. Ct. App. 2004).  Gross negligence has also been described as "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks."  *Reynolds v. Detroit Public Schools*, 2008 WL 2389492 at *2 (Mich. Ct. App., June 12, 2008).

Plaintiff has neither alleged nor established that he suffered any injury or that any injury he may have suffered was caused by grossly negligent conduct by any Defendant.  Plaintiff merely asserts, in conclusory fashion, that Defendants acted with gross negligence.  Such hardly states a claim on which relief may be granted.  Accordingly, the Court recommends that Plaintiff's gross negligence claims be dismissed.

## VIII.        Plaintiff's Claims Against Defendant Genter

Plaintiff initiated the present action on April 7, 2006, against Defendants Crawford, Wayne, Church, Hewgley, and Youngs.  (Dkt. #1).  On April 27, 2006, the Court informed Plaintiff that because he was not proceeding as a pauper in this matter, "he is responsible for service of summons and complaint upon Defendants."  (Dkt. #2).  On January 22, 2008, Plaintiff submitted an amended complaint, adding Sheila Genter as a defendant.  (Dkt. #87).  On January 23, 2008, the Court issued and returned to Plaintiff a summons for Defendant Genter.  More than one year has since passed and Plaintiff

has failed to effect service on Defendant Genter or request an extension of time within which to effect service on Defendant Genter.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted). Considering Plaintiff's lack of diligence in this matter, the Court recommends that Plaintiff's claims against Defendant Genter be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

For the reasons articulated herein, the Court recommends that Defendant Youngs' Motion for Summary Judgment, (dkt. #112), be **granted in part and denied in part**. Specifically, the Court recommends that Defendant Youngs is entitled to summary judgment as to all Plaintiff's claims, except his First Amendment retaliation claim which be permitted to go forward. The Court also recommends that the Motion to Dismiss and/or for Summary Judgment, (dkt. #115), brought by Defendants Crawford, Wayne, Church, and Hewgley, be **granted**. The Court further recommends that Plaintiff's claims against Defendant Genter be **dismissed without prejudice** for failure to timely effect service.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  January 22, 2009

_/s/ Ellen S. Carmody_____
ELLEN S. CARMODY
United States Magistrate Judge