UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW MAULE,

    Plaintiff,                                                    Hon. Robert Holmes Bell

v.                                                                           Case No. 1:06 CV 236

JIM CRAWFORD, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Youngs' Motion for Summary Judgment. (Dkt. #141). Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions to dismiss or for summary judgment, the undersigned recommends that Defendant Youngs' motion be **granted** and Plaintiff's action **dismissed**.

## BACKGROUND

Based on events which occurred on February 28, 1998, Plaintiff was charged with three counts of criminal sexual conduct with a person between the ages of 13-15. (Dkt. #115, Exhibit A). Plaintiff pleaded guilty to these charges, and on September 1, 1999, he was sentenced to serve 5-15 years in prison. *Id.* On March 12, 2004, Plaintiff was released from prison on parole, subject to (in part) the following conditions: (1) he was prohibited from engaging in threatening or intimidating behavior; (2) he was prohibited from having contact with minors; (3) he was prohibited from associating with

convicted felons; and (4) he was prohibited from consuming alcohol or frequenting establishments serving alcohol for consumption on the premises. (Dkt. #115, Exhibit B). Defendant Youngs was assigned as Plaintiff's parole officer. In March 2005, Plaintiff was arrested and charged with violating these conditions. This action concerns the conduct which led to Plaintiff's March 2005 arrest and his subsequent preliminary parole violation hearing. The following allegations are contained in Plaintiff's First Amended Complaint. (Dkt. #87).

On or about January 14, 2005, Plaintiff met Becky Grover, with whom he "started to develop a relationship." On March 21, 2005, Plaintiff "permanently ended" his relationship with Grover because she had "returned to using drugs." Upon learning of Plaintiff's decision, Grover was "very angry." The following day, Grover made a "written and oral complaint" to Defendant Youngs that resulted in Plaintiff being charged with multiple violations of his parole requirements.

On March 23, 2005, Defendant Youngs telephoned Plaintiff and instructed him to report to her office the following day. Plaintiff reported to Defendant Youngs as instructed, at which point he was taken into custody and transported to the Osceola County Jail. On March 24, 2005, Defendant Youngs met with Plaintiff and informed him that he was being charged with six parole violations. Plaintiff was informed that he had a right to preliminary parole violation hearing at which it would be determined whether there existed probable cause to believe that he committed a parole violation.

When Plaintiff requested a preliminary parole violation hearing, Defendant Youngs told him that such a hearing would be a "waste of time." Plaintiff nonetheless requested a preliminary hearing, in response to which Defendant Youngs "displayed agitation, upset and anger" and told Plaintiff that "more charges will now be added." Defendant Youngs also rejected Plaintiff's request to be represented by counsel at the preliminary hearing.

On March 25, 2005, Defendant Youngs again met with Plaintiff, informing him that he was being charged with two additional parole violations. Plaintiff again requested a preliminary parole violation hearing. He also "inquired into being allowed an attorney at his preliminary hearing and was again directed by Defendant Youngs that an attorney would not be allowed nor appointed." Defendant Youngs then asked Plaintiff if he wanted to question any witnesses in his behalf at the preliminary hearing. Plaintiff informed Youngs that he wanted to question Larry Claybough. Defendant Youngs told Plaintiff that because Claybaugh was on probation he would not be permitted to testify. Plaintiff was informed that his preliminary parole violation hearing would be conducted on March 29, 2005.

On March 25, 2005, Plaintiff requested that he be permitted "access to" the jail's law library so that he could prepare for his preliminary hearing. Defendant Hewgley informed Plaintiff that his request would be reviewed by Defendant Wayne. Plaintiff did not receive a response to his request.

On March 29, 2005, Plaintiff was placed in "physical restraints" and escorted to the room in which his preliminary hearing was conducted. Upon entering the hearing room, Plaintiff requested that his restraints be removed, a request which Defendant Youngs denied. During the hearing, Plaintiff was required to sit in an "under-size" chair while "everybody" else sat in "adult-size" chairs. Due to "the height of the table top and the degree of the physical restraint," Plaintiff "had to use his cheek and mouth to shuffle through the documents he possessed."

At the outset of the hearing, Plaintiff requested that an attorney be appointed to represent him. Defendant Genter denied Plaintiff's request. During the hearing, Plaintiff sought to "admit documentary evidence in his favor," but was denied by Defendant Genter. Plaintiff also requested that Larry Claybough be allowed to testify, a request which Defendant Youngs denied. Defendant Genter

"made no findings at the preliminary hearing" and Plaintiff "was not informed of any disposition until twenty-three (23) days later when he learned that Genter found probable cause."

On April 5, 2005, the MDOC issued an arrest warrant for Plaintiff. On April 6, 2005, Plaintiff again requested to use the jail's law library to prepare for "his anticipated formal parole revocation hearing." Plaintiff received no response to this request. On April 11, 2005, Plaintiff renewed his request to use the jail's law library. That same day, Plaintiff requested an inmate grievance form so that he could grieve his inability to use the jail's law library. Defendant Church denied Plaintiff's request, after which Plaintiff "drafted and mailed a 'home-made' grievance" to Defendant Wayne. On April 12, 2005, Plaintiff was informed that his request to use the jail's law library "has been turned over to the probation department because we don't have those materials here." On April 13, 2005, Plaintiff was transferred from the Osceola County Jail to a Michigan Department of Corrections facility.

Plaintiff initiated the present action on April 7, 2006, against Jim Crawford, Osceola County Sheriff; Russ Wayne, Osceola County Jail Administrator; Jean Hewgley, Osceola County Deputy Sheriff; Gae Church, Osceola County Deputy Sheriff; Nancy Youngs, Parole Officer; and Sheila Genter, Hearings Examiner. As detailed below, Plaintiff asserts that Defendants: (1) violated his procedural due process rights; (2) violated his substantive due process rights; (3) violated his right of access to the courts; (4) violated his right to be from "deliberate indifference;" (5) failed to adequately train and supervise; (6) retaliated against him; and (7) were grossly negligent. Plaintiff's claims have since been dismissed, save his First Amendment retaliation claim against Defendant Youngs, who now moves for summary judgment.

## **STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere

allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS[1]

Plaintiff asserts that Defendant Youngs unlawfully retaliated against him. As noted above, Plaintiff was initially charged with six parole violations. According to Plaintiff, however, after indicating to Defendant Youngs that he wanted a preliminary parole violation hearing he was charged with two additional parole violations. Plaintiff asserts that Defendant Youngs charged him with these two additional charges as retaliation for requesting a preliminary parole revocation hearing.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Defendant does not challenge that Plaintiff was engaged in protected conduct or that he suffered a

---

[1] In support of her motion for summary judgment, Defendant Youngs has submitted a copy of what is purported to be Plaintiff's deposition testimony. (Dkt. #141, Exhibit C). In response to the present motion, Plaintiff asserts that the Court should not consider this evidence as it is not properly authenticated. Plaintiff further asserts that the transcript is inaccurate. This exhibit contains no evidence of authentication executed by the individual who performed the transcription. As this exhibit has not been properly authenticated, the Court has not considered it in resolving the present motion.

sufficiently adverse action. Instead, Defendant asserts that there does not exist a genuine factual dispute as to the causation element of the analysis.

With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399; *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). If Plaintiff makes this showing, the burden shifts to Defendant, who is entitled to summary judgment if she "can show that [s]he would have taken the same action in the absence of the protected activity." *Thaddeus-X*, 175 F.3d at 399; *Eby*, 481 F.3d at 441-42.

In support of her motion for summary judgment, Defendant has submitted an affidavit in which she asserts the following:

> On March 25, 2005, I provided the Plaintiff with a written copy of parole violation charges 1 through 6 at the Osceola County Jail. This was done at the direction of my supervisor, Terry Wildfong, Michigan Department of Corrections. Later that same day, when additional information was brought to my attention, I shared it with Mr. Wildfong who then instructed me to serve the Plaintiff with two additional charges (i.e. 7 and 8) which I did.

(Dkt. #141, Exhibit A).

Defendant has also submitted an affidavit executed by Terry Wildfong, in which he asserts the following:

> Moreover, pursuant to Operating Procedure 06.06.115,[2] Ms. Youngs, as a Parole Agent was not authorized to charge a parolee with parole violations. Rather, only a supervisor such as myself could authorize the filing of such charges.

(Dkt. #141, Exhibit B).

Plaintiff has submitted no evidence in response to Defendant's motion, but instead is simply relying on a previously submitted affidavit in which he asserts that after requesting a preliminary hearing, Defendant Youngs stated, "I'm adding more charges now." (Dkt. #121). Such fails to demonstrate the existence of a genuine factual dispute. Defendant has submitted evidence that Plaintiff was charged with the additional parole violations because of new information which subsequently came to light. Defendant has also submitted evidence that she was not even authorized to, and did not, charge Plaintiff with the two additional parole violations. Plaintiff has not submitted any evidence to the contrary.

Simply put, even if Defendant Youngs did state to Plaintiff that she would be "adding more charges," the evidence establishes that Defendant lacked the authority to charge Plaintiff with a parole violation and, furthermore, that the decision to charge Plaintiff with the additional parole violations was unrelated to Plaintiff's protected conduct. Despite having more than four years within which to conduct discovery, Plaintiff has submitted no evidence that Defendant Youngs participated in or played any role in the decision to charge him with the two additional parole violations. Plaintiff has likewise submitted no evidence that the decision to charge him with the additional parole violations was in any way motivated by his protected conduct. Accordingly, the undersigned recommends that Defendant Youngs' motion for summary judgment be granted.

---

[2] This Operating Procedure provides, in relevant part, that "[p]arole violation charges shall be served only with supervisor approval." (Dkt. #141, Exhibit J at ¶ M; Dkt. #141, Exhibit H).

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendant Youngs' Motion for Summary Judgment</u>, (dkt. #141), be **granted** and Plaintiff's action dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 21, 2010         /s/ Ellen S. Carmody
                            ELLEN S. CARMODY
                            United States Magistrate Judge